United States District Court
Southern District of Texas

**ENTERED**

November 07, 2019

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ADAN VALDEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL NO. 2:15-CV-00144 |
| | § | |
| SUPERIOR ENERGY SERVICES INC.; | § | |
| dba SPC RENTALS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

The Court is in receipt of Plaintiff Adan Valdez's ("Valdez") "Submission Addressing the Court's January 14, 2019, Order Regarding Approval of Settlement," Dkt. No. 111. The Court is also in receipt of Defendants Warrior Energy Services Corporation, d/b/a SPC Rentals, Inc.'s ("Defendants") "Statement in support of Plaintiffs' Submission Regarding Approval of Settlement," Dkt. No. 113. For the reasons stated below the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's proposed settlement.

## I.    Background

Valdez filed a lawsuit on March 25, 2015 in the Southern District of Texas claiming he and similarly situated well-site service employees were misclassified and not paid overtime wages under the Fair Labor Standards Act 29 U.S.C. § 201 *et seq*. Dkt. No. 1. Valdez brought the action as a collective action pursuant to 29 U.S.C. § 216(b). *Id.* The Parties stipulated to conditional certification of the collective action on March 10, 2016. Dkt. No. 35. After notice, 66 individuals opted into the collective action. Dkt. Nos. 40-48, 51, 53, 54. After the opt-in period closed the parties began settlement discussions. Dkt. No. 111 at 3. Parties did not engage in formal discovery. Dkt. No. 111 at 16. The parties exchanged information regarding the number hours worked including payroll registers, payroll files, bonus sheets, and documents identifying job duties and pay provisions. Dkt. No. 111 at 3.

Disputes over hours existed because the company did not track many of the contested hours Plaintiffs worked during the time in question. Dkt. Nos. 111 at 3; 113 at 2. Additionally, the models that Valdez and Defendants used to compute damages varied widely because Valdez's estimates were based on a 94 hour work week and included time as a high as 114 hours per week. Dkt. Nos. 111 at 4, 113 at 3. Valdez claims it was also difficult to compute the damages because the pace of work changed between 2015 and 2014 due to a drop in the price of oil. Dkt. No. 111 at 5. Parties attended three mediations with mediators William Lemons and Carla Cotropia. Dkt. No. 113 at 3. The Parties say the mediations brought their estimates closer together until they were able to reach an agreement at the third mediation. Dkt. Nos. 113 at 3, 111 at 4.

Following the filing of a notice of settlement, Dkt. No. 89, Valdez filed an addendum to the joint notice requesting no approval process for the settlement, Dkt. No 90. Valdez argued that unsupervised settlement agreements of FLSA claims are permissible so long as the agreements were reached due to a bona fide dispute over hours worked or compensation owed. Dkt. No. 90. For this proposition, Valdez primarily cited *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247 (5th Cir. 2012) and *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159 (5th Cir. 2015). Plaintiffs counsel stated he was directing Fifth Circuit courts to *Martin* and *Bodle* to "help those courts understand there was a significant change in what was longstanding law." Dkt. No. 90 at 1 n1.

This Court considered the request for no settlement process on June 25, 2018. Dkt. No. 92. The Court stated the law around protections of FLSA claims pursuant to 29 U.S.C. § 216(b) and the settlement approval process. Dkt. No. 92 at 3. The Court also stated the law around FSLA attorney's fees and costs. Dkt. No. 92 at 4. Specifically, this Court stated: "The FLSA provides that the court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.' 29 U.S.C. § 216(b)." Dkt. No. 92 at 4. Additionally, the Court cited the Fifth Circuit case law that requires using the lodestar method to assess attorney's fees. Dkt. No. 92 at 4.

This Court held "Parties fail to show that their pending settlement agreement does not require Court approval according to the standards set forth in *Martin* and *Bodle*." Dkt. No. 92 at 5. The Court found that Valdez's complaint does not show the parties engaged in a factual development of the number of overtime hours or that the parties' settlement agreement is based on such developed facts, so therefore the complaint fails to show the Parties settled due to a bona fide dispute. Dkt. No. 92 at 5 (citing *Bodle*, 788 F.3d at 165). The Court also noted that the settlement agreement at that time was not finalized so *Martin* and *Bodle* would not apply. Dkt. No. 92 at 5. "Parties must proffer evidence that their settlement agreement is finalized for the Court to consider applying the *Martin* and *Bodle* exception." Dkt. No. 92 at 6. The Court then warned Plaintiffs to not include attorney's fees within the settlement agreement. Dkt. No. 92. at 6. "The Court cautions Plaintiffs' counsel that he must move for any attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2)(A) rather than merely provide for such fees and costs in any settlement agreement. The Court will analyze any motion for attorney's fees and costs pursuant to the legal standard outlined above." Dkt. No. 92 at 6. Finally, this Court noted Plaintiff counsel's claims that he was helping other courts understand the significant change in the law. Dkt. No. 92 at 6. The Court ordered Plaintiff to file a brief "that (1) cites to cases in which Plaintiff's counsel directed other courts to *Martin* and *Bodle* and (2) represents how the courts received Plaintiff's counsel's argument that "settlement approval in the context of a lawsuit is no longer required." Dkt. No. 92 at 6.

Plaintiff's filed a Submission Concerning the Actions of Other Courts on July 16, 2018. Dkt. No. 95. In the filing Plaintiffs' counsel stated that in *Lockett v. Daybreak Venture, LLC, et al*, 4:17-cv-00211-ALM-KPJ (E.D. Tex. April 9, 2018) "the parties sought an extension to file settlement documents in a case which was quickly approaching trial." Dkt. No 95 at 1. Plaintiff's counsel represents that he indicated to Magistrate Judge Kimberly C. Priest Johnson the long-standing requirement for an FLSA settlement to be approved had been changed. Dkt. No. 95 at 2. The Magistrate Judge asked for the citations to *Martin* and *Bodle* and

indicated she would review the cases and if she disagreed with counsel's opinion, she would issue an order requiring the parties to submit the agreement for approval. Dkt. No. 95 at 2. A week later, the parties submitted a stipulation of dismissal in the case. Dkt. No. 95-2 at 2. District Court Judge Amos L. Mazzant dismissed the case pursuant to Federal Rule of Civil Procedure 41(a)(1). Dkt. No. 95-3 at 1. The court in *Lockett* did not comment on a *Martin* and *Bodle* exception in its dismissal. Dkt. No. 95-3 at 1.

Valdez filed numerous motions for extension of time to file the brief for settlement approval. Dkt. Nos. 93, 103, 105, 106, 108, 109, 110. During that period this Court reiterated its previous instruction and ordered Parties to file a finalized agreement and proffer evidence that the holdings in *Martin* and *Bodle* would apply to the case. Dkt. No. 100. The Parties filed a joint status report in August, 2018 stating that they would execute the settlement agreement shortly. Dkt. No. 101. There were no further filings in the case until January 14, 2019 when this Court ordered the parties to submit a motion for approval of settlement agreement. Dkt. No. 102. After considering Valdez' submission to "help those courts understand there was a significant change in what was longstanding law," the Court decided the argument was unavailing. Dkt. No. 102. This Court held the law simply would not hold the construction Valdez hoped to give it. Dkt. No. 102 at 2. This Court explained at length:

> "Thus, the Fifth Circuit has recognized that though, as a general rule, FLSA claims cannot be waived through an unsupervised agreement, a court may enforce 'private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due.' *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (quoting *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005)). 'By 'private,' the *Martin* Court is referring to settlements made outside of the court system without a lawsuit having been filed.' *Lipnicki v. Meritage Homes Corp.*, No. 3:19-cv-605, 2014 WL 923524, at *14 (S.D. Tex. Feb. 13, 2014) (Costa, J.). *Martin* thus only applies in cases where a court is reviewing a settlement agreement entered by parties prior to the FLSA lawsuit.
> Further, the *Martin* exception has been applied by the Fifth Circuit and its district courts in the context of reviewing pre-suit settlement agreements;

that is, where a court determines *ex post* the enforceability of an unsupervised settlement agreement entered by parties prior to the present litigation. '*Martin* stands for retrospective scrutiny to determine the agreement's enforceability *ex post*. . . . In contrast, the *Lynn's Food* standard is applied prospectively to approve the agreement *ex ante*." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 528 (E.D. Pa. 2016). *Martin* therefore does not undermine the applicability of *Lynn's Food* in cases where a court *reviews ex ante* a settlement agreement resolving the claims in the instant litigation.

Dkt. No. 102 at 2.

The Court instructed the Parties that they "must still request the court's approval of their proposed FLSA settlement agreement before seeking dismissal." Dkt. No. 102 at 3. This Court held that "seeking dismissal without court approval of the proposed settlement agreement resolving the FLSA claims in the present litigation is improper." Dkt. No. 102 at 3.

This Court explained the review furthers the policy concerns underlying the FLSA:

> "Permitting parties to seek dismissal without court approval 'undermines finality by leaving the parties in an uncertain position until a dispute over its enforceability arises.' *Id.* Employers would still be at risk of future litigation exposure, and 'waiting until a dispute arises to assess the terms of an FLSA settlement would abdicate the Court's responsibility to ensure that the employee's rights are not unfairly compromised.' *Id.*
> In light of persuasive case law and the unique policy considerations underlying the FLSA, this Court joins our sister district court and other courts by conditioning dismissal upon the court's approval of an FLSA settlement."

Dkt. No. 102 at 3.

The Court then stated the multi-step process it would use to scrutinize the settlement agreement. Dkt. No. 102 at 4. This Court also reiterated its prior instruction that Plaintiff's counsel "must move for any attorney's fees and costs." Dkt. No. 102. The Court again quoted 29 U.S.C. § 216(b) which provides for the allowance of a reasonable attorney's fee to be paid by the Defendant. Dkt. No. 102 at 5. This Court stated: "In FLSA collective actions, the court must determine the reasonableness of the proposed attorney's fees and costs as part of the fairness determination." Dkt. No. 102 at 5. This Court then explained the two-step legal

standard it would apply in computing reasonable attorneys' fees. Dkt. No. 102 at 5. This Court stated at length the legal standard in the Fifth Circuit for hours expended, hourly rates, and cost computation. Dkt. No 102 at 6-7. This Court ordered Parties:

> "to submit a Motion for Approval of Settlement Agreement, with corresponding settlement documents, demonstrating (1) the existence of a bona fide dispute and (2) that the proposed settlement is fair and reasonable compromise. Further, if Plaintiffs seek attorney's fees and costs, they must file a separate motion for attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 54(d), with supporting evidence, demonstrating the reasonableness of the fees and costs."

Dkt. No. 102 at 8.

On May 1, 2019 Valdez filed a "Submission Addressing the Court's January 14, 2019, Order Regarding Approval of Settlement." Dkt. No. 111.

## II.   Settlement Terms

The Parties reached an agreement following a third mediation on May 9, 2018. Dkt. No. 111 at 4. The agreement was fully executed in August, 2018. Dkt. No. 113 at 3. The Parties stated they separately resolved FLSA claims and attorney's fees. Dkt. No. 111 at 5. Parties agreed to resolve unpaid overtime and liquidated damages for $1,537,763.00. Dkt. Nos. 111 at 6; 111-1 at 1. The agreement specifies that two checks would be made payable to each Plaintiff, half of the payment represents lost wages and half represents the settlement of all other claims for liquidated damages. Dkt. No. 111-1 at 1. The agreement proposes a service award of $15,000 for Valdez's role as leader of the collective action. Dkt. No. 111-1 at 1. The average recovery for 66 plaintiffs would be $22,299.

The proposed settlement includes a release of wage related claims against Defendants and for Valdez to release all claims which he may have against the company. Dkt. No. 111-1 at 2. The proposed settlement includes a confidentiality provision for all matters of the settlement negotiations and settlement amount. Dkt. No. 111-1 at 3. It includes non-disparagement, indemnification and no admission clauses. Dkt. No. 111-1 at 4. The settlement makes provision for unclaimed checks. Dkt. No. 111-1 at 6. In support of the agreement, Valdez attached the proposed

settlement and a declaration from Plaintiff's counsel stating the same information in Valdez's brief. Dkt. No. 111-2.

The Parties also stated that they resolved to settle attorney's fees and costs for $1,047,237.00. Dkt. No. 111 at 6. The proposed settlement agreement specified that one check would be made payable to "Braziel Law Offices, PC" for $1,047,237.00 which "represents a settlement of Plaintiffs' claim for attorneys' fees and costs." Dkt. No. 111-1 at 2. Plaintiff's counsel indicates that this amount would satisfy all obligations and liens between Plaintiffs' Counsel and Plaintiffs. Dkt. No. 111 at 6. Plaintiff's counsel states "should the Court for some reason reduce the amount of fees and costs Defendants have already agreed to pay, the difference likely reverts to Defendants, and Plaintiffs would still have an obligation to pay their counsel in accordance with terms of their agreement with their counsel." Dkt. No. 111 at 6. The proposed agreement specifies that defendant will deliver all settlement checks within 10 days of the execution of the agreement or 21 days of Court approval of the settlement. Dkt. No. 111-1 at 2.

Shortly after the proposed settlement was filed, Defendants filed a "Statement in Support of Plaintiffs' Submission Regarding Approval of Settlement." Dkt. No. 113. The statement supports Valdez's contentions that the settlement of damages was resolved based on a genuine dispute over the number of hours worked and represents a compromise over the risks of proceeding to trial. Dkt. Nos. 111 at 16; 113 at 16-17. The Defendants represent that the settlement would be fair given the possible range of recovery and uncertainty of litigation. Dkt. No. 113 at 19. The filing supports Valdez's contention that the settlement represents a process of mediation over uncertain overtime hours. Dkt. No. 113 at 18. Both Parties' filings assert that the settlement satisfies the six-factor test for adequacy of a class settlement. Dkt. Nos. 111 at 15, 113 at 13.

Defendants state that Plaintiffs will receive a gross average (amount purportedly accounting for attorney's fees) of about $40,000 under the settlement. Dkt. No. 113 at 1. Defendants also state that the overall settlement allocates 40 percent of the total paid by Defendants to attorney's fees. Dkt. No. 113 at 3.

## III.   Legal Standard

### a.  Settlement approval

Courts may approve FLSA settlement agreements only if they reflect "a fair and reasonable compromise of a bona fide dispute under the FLSA." *Beardslee v. Randalls Food & Drugs LP*, No. H-09-1200, 2009 WL 1957714, at *1 (S.D. Tex. July 7, 2009). When scrutinizing an FLSA settlement agreement, courts first look to the existence of a bona fide dispute. *Villeda v. Landry's Restaurant, Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009). A bona fide dispute as to liability exists where the evidence in the record is inconclusive as to the hours worked or the amount of compensation owed. *Sandlin v. Grand Isle Shipyard, Inc.*, No. 17-10083, 2018 WL 2065595, at *6 (E.D. La. May 3, 2018). For example, parties may point to conflicting evidence in the record as to the hours worked or wages owed[1] or evidence demonstrating that it is impossible to determine those amounts.[2] Submission of the settlement agreement containing conclusory language stating the release of claims in exchange for a certain amount, without more, is insufficient to prove a bona fide dispute.[3]

Courts then look to whether the proposed settlement is a fair and reasonable compromise over the issues. "If the settlement reflects 'a reasonable compromise over the issues,' the court may approve it." *Villeda*, 2009 WL 3233405, at *1. (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *see also Jarrard v. Se. Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947).

[1] *See Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005) (finding bona fide dispute where plaintiff maintained in his statement that he was owed over $3,000 in overtime compensation and defendants presented conflicting evidence that plaintiff was owed only $509.06).
[2] *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012) (finding bona fide dispute where evidence included union representative's conclusion that "it would be impossible to determine" actual hours worked).
[3] *See Lopez v. S. Arch, LLC*, No. 15-6302, 2016 WL 3617671, at *5 (E.D. La. July 6, 2016) (finding no bona fide dispute where parties only offered as evidence the settlement agreement containing "broad, boilerplate language" stating that plaintiff released all claims and acknowledged that he is entitled to receive no other payments from Defendants besides his $500 settlement).

"Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires a court approval to finalize a proposed class action settlement." *Sims v. Hous. Auth. City of El Paso*, No. EP-10-CV-109, 2012 WL 10862119, at *3 (W.D. Tex. Feb. 29, 2012). "Thus, the Rule 23(e) standard encompasses the 'fair and reasonable' settlement standard of the FLSA collective action, and cases interpreting Rule 23(e) are analogous and applicable to the instant FLSA action." *Id.* at 2. (quoting *Altier v. Worley Catastrophe Resp., LLC*, Nos. 11-241, 11-242, 2012 WL 161824, at *14 (E.D. La. Jan. 18, 2012)).

Under Rule 23, a court considers six factors in evaluating whether a settlement is "fair, adequate, and reasonable": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Accordingly, the Court will rely on these factors as guidance in determining whether the proposed FLSA settlement is a "fair and reasonable" compromise over the issues.

### i. Private compromise exception

The Fifth Circuit has recognized that though, as a general rule, FLSA claims cannot be waived through an unsupervised agreement, a court may enforce "private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due." *Martin*, 688 F.3d at 255 (quoting *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 631 (W.D. Tex. 2005)). "By 'private' the *Martin* Court is referring to settlements made outside of the court system without a lawsuit having been filed." *Lipnicki v. Meritage Homes Corp.*, No. 3:19-cv-605, 2014 WL 923524, at *14 (S.D. Tex. Feb. 13, 2014) (Costa, J.). Martin thus only applies in cases where a court is reviewing a settlement agreement entered by parties prior to the FLSA lawsuit. *Id.*

Further, the *Martin* exception has been applied by the Fifth Circuit and its district courts in the context of reviewing pre-suit settlement agreements; that is, where a court determines *ex post* the enforceability of an unsupervised settlement agreement entered by parties prior to the present litigation.[4] "Martin stands for retrospective scrutiny to determine the agreement's enforceability ex post. . . . In contrast, the *Lynn's Food* standard is applied prospectively to approve the agreement ex ante." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 528 (E.D. Pa. 2016). *Martin* therefore does not undermine the applicability of *Lynn's Food* in cases where a court reviews *ex ante* a settlement agreement resolving the claims in the instant litigation.[5]

Policy concerns behind the FLSA support judicial scrutiny. Permitting parties to seek dismissal without court approval "undermines finality by leaving the parties in an uncertain position until a dispute over its enforceability arises." *Kraus*, 155 F. Supp. 3d at 528. Employers would still be at risk of future litigation exposure, and "waiting until a dispute arises to assess the terms of an FLSA settlement would abdicate the Court's responsibility to ensure that the employee's rights are not unfairly compromised." *Id.*

### b. Attorney's fees

Under the FLSA, courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the Defendant, and costs of action." 29 U.S.C. § 216(b). In the Fifth Circuit "'[r]easonable attorney's

---

[4] *See, e.g., Bodle*, 788 F.3d at 165-66 (declining to enforce settlement entered by parties before lawsuit); *Martin*, 688 F.3d at 255 (enforcing settlement made prior to FLSA action); *Lopez*, 2016 WL 3617671, at *5 (refusing to enforce agreement signed by plaintiff before his lawsuit); *Martinez*, 361 F. Supp. 2d at 631 (enforcing release of plaintiff's FLSA rights in exchange for settlement payment made before filing of complaint).

[5] Several courts have recognized that *Martin* addresses only *ex post* review of an agreement's enforceability. *See, e.g., Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 204 (2d Cir. 2015) ("While offering useful guidance, the cases discussed above [including *Martin]* arise in the context of whether a private FLSA settlement is enforceable. The questions before us, however, asks whether the parties can enter into a private stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may later be enforceable."); *Cox v. Sunflower Cty. Consol. Sch. Dist.*, No. 4:16-cv-192, 2017 WL 3584916, at *2 (N.D. Miss. Aug. 18, 2017) ("While *Martin* allows a court to enforce a settlement after it has been executed, *Lynn's Foods* holds 'that ex ante judicial scrutiny of a private FLSA settlement is required.'") (quoting *Kraus*, 155 F. Supp. 3d at 528).

fees are mandatory' when a court finds that an employer has violated § 206." *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016). This requirement includes a determination of reasonable attorney's fees as part of an approval of a settlement. *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 848 (5th Cir. 1998); *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 728 (E.D. La. 2008). Applicants bear the burden of establishing that the fees and costs are reasonable. *See Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002).

The Fifth Circuit uses the lodestar method to assess attorney's fees. *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 228 (5th Cir. 2008). The computation of a reasonable attorney's fee award is a two-step process. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (1995). First, the court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. *Id.* The total of reasonable hours expended is multiplied by the reasonable hourly rates, and the product of this multiplication is the "lodestar." *Id.* Second, there exists a strong presumption of the reasonableness of the "lodestar" amount, but a reasonable fee is not intended to produce windfalls to attorneys. *Purdue v. Kenny A.*, 559 U.S. 542, 553-54 (2010).

The determination of the reasonable fee is to be conducted regardless of any contract between plaintiff and plaintiff's counsel. *Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S. Ct. 939, 944 (1989). The FLSA intends to protect workers, and the review of the attorney's fee ensures no conflict of interest compromises the employee's recovery. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009); *see In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d at 228.

Federal courts have a "well-recognized power" to reform contingent fee contracts. *Karim v. Finch Shipping Co.*, 374 F.3d 302, 309 (5th Cir. 2004). District courts have used their inherent authority to examine contingency fees where claimants are vulnerable or protected by statute. *See id; In re Vioxx Prod. Liab. Litig.*, 650 F. Supp. 2d 549, 560 (E.D. La. 2009). Setting FLSA attorney's fees according to an underlying contingent fee agreement would defeat the plain

language of the FLSA and its purposes.[6] *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009) ("the parties cannot contract in derogation of FLSA's provisions"); *Dumas v. King*, 157 F.2d 463, 466 (8th Cir. 1946) ("the FLSA does not contemplate an amount in the nature of speculative or contingent fee"). District courts have modified contingency agreements after determining reasonable attorney's fees under 29 U.S.C. § 216(b). *Zegers v. Countrywide Mortg. Ventures*, LLC, 569 F. Supp. 2d 1259, 1268 (M.D. Fla. 2008) ("The Court, therefore, must determine what is a reasonable fee and will find any contingency fee agreement that requires an additional payment to be unenforceable."); *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *4-5 (W.D. Tex. Feb. 29, 2016) (reviewing and modifying 40% contingent attorney's fees); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015).

IV.   **Analysis**

    a.  **FLSA settlement**

        i.  **Bona fide dispute**

The Parties represent here that the settlement was over a bona fide dispute because many working hours were not recorded by Defendants during the relevant time period. Dkt. Nos. 111 at 3; 113 at 2. Even after sharing relevant employment data, both Parties agree the lack of information created widely different damage models. Dkt. Nos. 113 at 3; 111 at 15. The Parties represent that the sincerity of their genuine dispute is reflected in the protracted mediation process. Dkt. No. 111 at 16; 113 at 3. Plaintiff's counsel submitted an affidavit stating he reviewed records

---

[6] "Under Plaintiff's counsel's argument that the Court need not review this settlement agreement, counsel would be immune from judicial scrutiny and given carte blanche to recover as large a fee award as they can negotiate from their clients' employers. Such awards would be inconsistent with Supreme Court and Eleventh Circuit precedent, disregard the clear language of the FLSA, and frustrate the statute's underlying policy. In reversing the Fifth Circuit's enforcement of a contingency fee agreement in a civil rights case, the Supreme Court stated that a 'reasonable attorney's fee' should account 'for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard*, 489 U.S. at 93, 109 S.Ct. 939. The policy behind judicial determination of a 'reasonable attorney's fee' award is applicable in all FLSA cases, regardless of whether a plaintiff recovers the full amount to which she is entitled." *Silva v. Miller*, 547 F. Supp. 2d 1299, 1306 (S.D. Fla. 2008), aff'd, 307 F. App'x 349 (11th Cir. 2009); In 1947 Judges Learned and Augustus Hand took part in a panel which opined that contingent fee contracts in FLSA litigation could be improper. *Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947).

by Plaintiffs and those from Defendants. Dkt. No. 111-2 at 2. Both parties state that Valdez's information led to damage estimates based on a 94 hour work week and included damages for as high as 114 hours worked per week. Dkt. Nos. 113 at 3, 111 at 4. The Parties also state that Defendants' estimates were based on information which suggested a much lower hours per week calculation.  Dkt. Nos. 113 at 3;  111 at 4.

As stated above, for a bona fide dispute to exist there must be some evidence of genuinely disputed facts. *See Martinez*, 361 F. Supp. 2d at 631. A settlement must be more than broad boilerplate language regarding a dispute. *Lopez*, 2016 WL 3617671, at *5.

Although the Parties offered no first hand evidence of the discrepancy in hours worked, the Court finds the Parties have shown just enough to establish a bona fide dispute. Defendants and Valdez state that the dispute arose over untracked hours. Dkt. Nos. 113 at 2, 111 at 15, 111-2. This corresponds to the allegations set forth in the underlying complaint. *See* Dkt. No. 1. The absence of information about the hours for compensation establishes a reasonable dispute over facts. *See Martin*, 688 F.3d at 255. Accordingly, the Court will proceed to examine whether the proposed settlement is a fair and reasonable compromise over the issues.

### ii.  Fair and reasonable

As stated above, this Court examines (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *Reed*, 703 F.2d at 172; *Parker*, 667 F.2d at 1209.

1) The Court finds that because parties are represented by counsel and reached their proposed settlement through several arms-length mediations during which a neutral mediator was present there is limited concern for collusion. *See* Dkt. No. 111 at 4; 113 at 3.

2) The case is relatively complex due to the presence of 66 Plaintiffs and the nature of their allegations of unrecorded hours. Additionally, further negotiations and discovery could prove expensive and last many more months. *See* Dkt. No. 111 at 16.

3) Although this case dates to 2015, the litigation is not at an advanced stage because parties have not engaged in formal discovery. *See* Dkt. No. 111 at 16. The Parties represent that they have informally exchanged information and so have adequate knowledge to realistically value the claims. *See* Dkt. Nos. 113 at 15, 111 at 4. That information includes payroll registers, payroll files, bonus sheets, and documents identifying job duties and pay provisions. *See* Dkt. No. 111 at 3

4) Defendants contest that proof of willfulness will be difficult for Valdez at trial and so puts success on the merits in doubt. *See* Dkt. No. 113 at 4.

5) Parties claim the range of recovery could vary widely based on the lack of recorded information available and the possibility that damages could be awarded for only two years instead of three. Dkt. No. 111 at 17, Dkt. No. 113 at 17.

6) The Parties appear to be represented by counsel with experience in collective actions. *See* Dkt. Nos. 113 at 18; 95.

Although these factors are not dispositive, the Court finds based on the discussion above that the settlement amount of $1,537,763.00 is a fair and reasonable settlement of Plaintiffs' FLSA claims.

### b. Attorney's fees

The proposed settlement filed by Valdez includes attorney's fees in the settlement document. Dkt. No. 111-1 at 2. Section 1(d) provides "One check shall be made payable to 'Braziel Law Offices, PC' in the amount of $1,047,237.00, which represents settlement of Plaintiffs' claim for attorneys' fees and costs for which Company will issue a Form 1099." Dkt. No. 111-1 at 2. This amount is just over 40 percent of the total settlement amount. Dkt. No. 111-1 at 2. Plaintiff's counsel states the $1,047,237 attorney's fee provision was set to cover the "contingency fee

obligations set forth in the Professional Service Agreement between Plaintiffs and their counsel." Dkt. No. 111 at 5.  He further states that "should the Court for some reason reduce the amount of fees and costs Defendants have already agreed to pay, the difference likely reverts to Defendants, and Plaintiffs would still have an obligation to pay their counsel in accordance with terms of their agreement with their counsel." Dkt. No. 111 at 6.

As stated above, this Court *shall* determine the reasonable attorney's fees for this settlement, and it *will* carry out that analysis with the lodestar method. *Supra* III(b); *see* 29 U.S.C. § 216(b); *Steele*, 826 F.3d at 249; *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d at 228.

This Court instructed Plaintiff's counsel on June 25, 2018 that he must make a separate motion for attorney's fees. Dkt. No. 92 at 6. "The Court cautions Plaintiff's counsel that he must move for any attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2)(A) rather than merely provide for such fees and costs in any settlement agreement." Dkt. No. 92 at 6. On January 14, 2019 this Court *again* instructed Plaintiff's counsel that "if Plaintiffs seek attorney's fees and costs, they must file a separate motion for attorney's fees and costs, pursuant to Federal Rule of Civil Procedure 54(d), with supporting evidence, demonstrating the reasonableness of the fees and costs." Dkt. No. 102 at 7-8.

Pursuant to the foregoing statement of law and this Court's prior instructions, the Court **DENIES** Plaintiff's counsel's request to approve the award of $1,047,237.00 for attorney's fees as included in Section 1(d) of the proposed settlement agreement. *See* Dkt. No. 111-1 at 2. If Plaintiff's counsel seeks attorney's fees and costs, he must file a separate motion, pursuant to Federal Rule of Civil Procedure 54(d), with supporting evidence, demonstrating the reasonableness of the fees and costs.[7] *See* U.S.C. § 216(b); *Steele*, 826 F.3d at 249; *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d at 228; Dkt Nos. 92, 102.

---

[7] Whether the difference between reasonable attorney's fees and the Parties' negotiated fees reverts to the Defendants is not an appropriate factor for the Court to use when determining the reasonableness of attorney's fees. *See La. Power & Light Co.*, 50 F.3d at 324.

In light of Plaintiff's counsel's position that Plaintiffs would still have an obligation to pay attorney's fees to Plaintiff's counsel pursuant to a preexisting contingency fee agreement, Dkt. No. 111 at 6, this Court finds Plaintiff's counsel's argument baseless. *See* Dkt. No. 111 at 6. This Court has a well-recognized power to reform contingent fee contracts and contracting in derogation of  FLSA protections is disfavored. *See Karim*, 374 F.3d at 309; *Silva*, 307 F. App'x at 351-52; *Dumas*, 157 F.2d at 466; *Zegers*, 569 F. Supp. 2d at 1268; *Dyson* 2016 WL 815355, at *5.

## V.   Conclusion

After finding a bona fide dispute and fair and reasonable settlement of Plaintiff's claims, this Court **APPROVES IN PART** and **DENIES IN PART** Plaintiff's Submission for Approval of Settlement, Dkt. No. 111.

- The Court **DENIES** approval of $1,047,237.00 for attorney's fees. Dkt. Nos. 111 at 6, 111-1 at 2 Section 1(d).
- The Court **APPROVES** of the $1,537,763.00 settlement to Plaintiffs and all other provisions of the proposed settlement agreement. Dkt. Nos. 111, 111-2.
- The Court **ORDERS** Plaintiff's counsel to file a separate motion for attorney's fees, pursuant to Federal Rule of Civil Procedure 54(d), with supporting evidence.

SIGNED this 7th day of November, 2019.

Hilda Tagle
Senior United States District Judge